## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| BRYAN KUBICEK, | ) |
| Plaintiff, | ) Case No._____ |
| v. | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE FEDERAL SECURITIES LAWS** |
| AEGION CORPORATION, STEPHEN P. CORTINOVIS, STEPHANIE A. CUSKLEY, WALTER J. GALVIN, RHONDA GERMANY BALLINTYN, CHARLES R. GORDON, M. RICHARD SMITH, and PHILLIP D. WRIGHT, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Bryan Kubicek ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Aegion Corporation ("Aegion" or the "Company") and the members of Aegion's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Aegion will be acquired by affiliates of New Mountain Capital, L.L.C. ("New Mountain") ("New Mountain") through Carter Intermediate, Inc. ("Parent") and Carter Acquisition, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party New Mountain is a New York-based investment firm.  Non-party Parent is a Delaware

2.      On February 16, 2021, Aegion announced it had entered into an Agreement and Plan of Merger dated February 16, 2021 (as amended on March 13, 2021 and April 13, 2021, the "Merger Agreement") to sell Aegion to New Mountain.  Under the terms of the Merger Agreement, each holder of Aegion common stock would receive $30.00 per share in cash for each share of Aegion common stock they own (the "Merger Consideration"). [2]

3.      On April 1, 2021, Aegion filed a Schedule 14A Definitive Proxy Statement (as supplemented on April 19, 2021, the "Proxy") with the SEC.   The Proxy Statement, which recommends that Aegion stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (a) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's financial advisor, Centerview Partners LLC ("Centerview"); (iii) the background of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the

---

corporation owned by an investment fund managed by New Mountain.  Non-party Merger Sub is a Delaware corporation and a direct wholly-owned subsidiary of Parent.

[2] The Proposed Transaction is valued at approximately $1.1 billion, including net debt.

Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Aegion.

10.      Defendant Aegion is a Delaware corporation, with its principal executive offices located at 17988 Edison Avenue, Chesterfield, Missouri 63005 and an office located in San Diego, California.  Aegion's common stock trades on the Nasdaq Global Select Market under the ticker symbol "AEGN."

11.      Defendant Stephen P. Cortinovis ("Cortinovis") has been a director of the Company since 1997.

12.      Defendant Stephanie A. Cuskley ("Cuskley") has been Chairwoman of the Board since April 2019 and has been a director of the Company since 2005.

13.      Defendant Walter J. Galvin ("Galvin") has been a director of the Company since 2014.

14.      Defendant Rhonda Germany Ballintyn ("Ballintyn") has been a director of the

Company since 2017.

15.     Defendant Charles R. Gordon ("Gordon") is President and Chief Executive Officer ("CEO") of the Company, and has been a director since 2009.

16.     Defendant M. Richard Smith ("Smith") has been a director of the Company since 2009.

17.     Defendant Phillip D. Wright ("Wright") has been a director of the Company since 2011.

18.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

19.     On February 16, 2021, Aegion issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> ST. LOUIS, Feb. 16, 2021 -- Aegion Corporation (NASDAQ:AEGN), a leading provider of infrastructure maintenance, rehabilitation and protection solutions, today announced that it has entered into a definitive merger agreement with affiliates of New Mountain Capital, L.L.C., ("New Mountain", and together with such affiliates "Buyer"), a leading growth-oriented investment firm headquartered in New York, in a transaction valued at approximately $963 million that will result in Aegion becoming a private company.
>
> Under the terms of the agreement, Buyer will acquire all outstanding shares of Aegion common stock for $26.00 per share in cash.   This represents a premium of approximately 21% over Aegion's closing stock price of $21.45 on February 12, 2021, the last trading day prior to today's announcement and a premium of approximately 28% to Aegion's 30-day volume weighted average price as of February 12, 2021.  The transaction, which was unanimously approved by the Aegion Board of Directors, is expected to close in the second quarter of 2021.
>
> "We are pleased to reach this agreement with New Mountain, which is in the best interests of Aegion stockholders and enables them to realize immediate value at a significant cash premium for their investment," said Stephanie Cuskley, Chairwoman of the Aegion Board.  "Following a comprehensive evaluation of potential value-creation opportunities with our independent advisors over the last several years, the Board unanimously approved this transaction with New Mountain, which has a proven track record of supporting businesses through investments in R&D and capital

expenditures that recognize the value of achieving differentiated long-term growth."

"Over the past several years, we have actively reshaped Aegion into a more streamlined and focused company. This transaction provides stockholders a premium valuation, recognizes the value our team has created and represents a new chapter for our company," said Charles R. Gordon, Aegion's President and Chief Executive Officer. "As a private company, we will have the resources and long-term approach to build on our progress and further enhance our differentiated portfolio of technologies. We have met with the New Mountain team several times in recent years and are confident in their focus on supporting our business, our people and achieving our long-term goals. We look forward to working together with New Mountain as we continue to deliver transformational solutions to maintain, rehabilitate and protect critical infrastructure around the world."

Harris Kealey, Managing Director at New Mountain Capital, commented, "We have long admired Aegion, its management team and talented employees, and we believe New Mountain can bring the key ingredients Aegion needs to continue on its successful trajectory. By combining Aegion's existing strengths with our experience identifying and investing in high-quality growth businesses that provide infrastructure services, protection and maintenance across water, power and broad infrastructure assets, such as Inframark, Pearce Services and TRC Companies, Aegion will be well-positioned to advance its client offerings and technological capabilities through continued investments in its business. This will lead to new opportunities for employees and development of innovative solutions that protect communities and their infrastructure."

Mr. Gordon will remain with the Company through the completion of the transaction to ensure a smooth ownership transition and continuity of operations. The acquisition recognizes the long and successful heritage of Aegion in St. Louis and in the many communities where Aegion and its subsidiaries operate across the globe. The talented management team and loyal employee base are critical to the day-to-day success of the Company, and there is no expectation to relocate the headquarters away from the metropolitan area. New Mountain also expects to maintain Aegion's significant presence in its field offices around the world.

Upon the close of the transaction, New Mountain will review the previously announced sales process for Aegion's Energy Services segment and determine what best positions the business for long-term success.

**Transaction Details & Path to Completion**

The transaction is expected to close in the second quarter of 2021 and is subject to Aegion stockholder approval, regulatory approvals and other customary closing conditions. The transaction is being financed through a combination of equity from affiliates of New Mountain and debt being provided by a combination of Jefferies, Credit Suisse and Deutsche Bank Securities Inc.

The Aegion Board of Directors recommends that Aegion stockholders approve the proposed merger and merger agreement. Aegion expects to hold a Special Meeting of Stockholders to consider and vote on the proposed merger and merger agreement as soon as practicable after the mailing of the proxy statement to its stockholders. Upon completion of the transaction, Aegion will become a privately held company and shares of Aegion common stock will no longer be listed on any public market.

**Fourth Quarter and Fiscal Year 2020 Earnings Results**

Aegion expects its fourth quarter and fiscal year 2020 earnings results to be in line with expectations. The Company intends to announce its results on March 10, 2021.

20.     Thereafter, Aegion received an unsolicited proposal and, following an initial amendment to the merger agreement, on April 14, 2020, Aegion issued a press release announcing further revised terms to the Proposed Transaction. The press release states, in relevant part:

ST. LOUIS – April 14, 2021 – Aegion Corporation (NASDAQ: AEGN) today announced that it has entered into a second amendment to the definitive merger agreement with affiliates of New Mountain Capital, L.L.C. ("New Mountain", and together with such affiliates "Buyer"), a leading growth-oriented investment firm headquartered in New York, to increase the consideration payable to holders of outstanding shares of Aegion common stock to $30.00 per share in cash from $27.00 per share in cash.

The revised transaction price represents a total enterprise value of $1.1 billion, including net debt. The revised per-share price represents a premium of 40% and 48% to Aegion's closing share price and 30-day VWAP, respectively, as of February 12, 2021, the last trading day prior to announcing the definitive merger agreement with New Mountain.

Pursuant to the amendment, as consideration for the increased purchase price, the break-up fee payable by Aegion in certain circumstances has increased from $40 million to $50 million. The termination fee payable by Buyer to Aegion in certain circumstances has also increased from $70 million to $90 million.

In evaluating this amendment, in consultation with its outside legal and financial advisors, Aegion's Board of Directors gave due consideration to a revised proposal received from an unsolicited third party (the "Third Party") (the "Third-Party Proposal") to acquire 100% of the shares of Aegion for $30.00 per share in cash. The Third-Party Proposal followed discussions and negotiations between the Third Party and management in the last few weeks following the disclosure on March 22, 2021 of the Board's determination that an unsolicited proposal from the Third Party for $28.50 per share in cash could reasonably be expected to result in a "Superior Proposal." In making its decision, the Board carefully assessed the relative benefits and risks of the revised proposals from both New Mountain and the Third Party. The Board

determined that, based on the consideration payable to stockholders and the superior certainty and anticipated timing to close the transaction with New Mountain, Aegion's entry into the amendment with New Mountain is in the best interests of Aegion's stockholders.

## The Proxy Contains Material Misstatements or Omissions

21.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Aegion's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

22.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; (iii) the background of the Proposed Transaction; and (iv)  Company insiders' potential conflicts of interest.

### *Material Omissions Concerning the Company's Financial Projections*

23.     The Proxy Statement omits material information regarding the Company's financial projections, including all line items underlying the calculation of: (i) EBITDA; (ii) NOPAT; and (iii) Unlevered Free Cash Flow.

24.     The omission of this material information renders the statements in the "Projected Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

### *Material Omissions Concerning Centerview's Financial Analyses*

25.     The Proxy Statement omits material information regarding Centerview's financial analyses.

26.     The Proxy Statement describes Centerview's fairness opinion, and the various

7

valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Aegion's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

27.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projection metric to which the perpetuity growth rates were applied to derive the terminal value in the analysis and quantification thereof; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 11.25%; (iii) quantification of Aegion's terminal value; and (iv) Aegion's fully-diluted outstanding shares.

28.     With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets analyzed; and (ii) the sources thereof.

29.     Without such undisclosed information, Aegion stockholders cannot evaluate for themselves whether the financial analyses performed by Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

30.     The omission of this material information renders the statements in the "Opinion of Aegion's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

31.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

32.     For example, the Proxy Statement sets forth that the Company entered into confidentiality agreements with ten potentially interested parties in September 2019, including three parties that submitted bids or unsolicited inquiries, identified in the Proxy Statement as "Party A," the "Party B Group" (consisting of "Party B," an affiliate of Party B, and New Mountain") and "Party C," that included "don't-ask, don't-waive" ("DADW") standstill provisions. Proxy Statement at 34. The Proxy Statement fails, however, to disclose the terms of the standstill provisions, including when the standstill restrictions in the confidentiality agreements entered into with Parties A, B and C expire or expired, and whether any of these previous bidders are presently precluded from submitting a topping bid for the Company.

33.     Moreover, according to the Proxy Statement, in violation of its DADW standstill restriction, New Mountain contacted Aegion in September 2020 to express its renewed interest in a potential transaction and submitted an indication of interest in December 2020. The Proxy Statement fails, however, to disclose whether the Board discussed New Mountain's violation of the standstill and the ramifications of their acquiescence to New Mountain's breach, and the details of those discussions. The Proxy Statement further fails to disclose the rationale or justification for not waiving the standstill restrictions that remained in effect after the termination of the outreach conducted by the Board in September 2019.

34.     Any reasonable Aegion stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

35.     The omission of this information renders the statements in the "Background of the

Acquisition" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

36.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Aegion insiders.

37.     The February 16, 2021 joint press release announcing the Proposed Transaction implies Aegion insiders have secured positions with the combined company, stating: "[Aegion's] talented management team and loyal employee base are critical to the day-to-day success of the Company, and there is no expectation to relocate the headquarters away from the metropolitan area. New Mountain also expects to maintain Aegion's significant presence in its field offices around the world."   The Proxy Statement fails, however, to disclose whether any members of Aegion management have secured employment with the combined company and the details of any employment and retention-related discussions and negotiations that occurred between New Mountain and Aegion executive officers and directors, including who participated in all such communications, when they occurred and their content.   The Proxy Statement further fails to disclose whether any of New Mountain's proposals or indications of interest mentioned management retention.

38.     In addition, although the Proxy Statement indicates that defendant Gordon, who announced his intention to retire on July 30, 2020, is expected to receive greater aggregate change in control payments upon consummation of the Proposed Transaction than he would otherwise expect to receive immediately upon retirement (*see id.* at 56), the Proxy Statement fails to quantify how much more compensation defendant Gordon will receive through the Proposed Transaction.

39.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.   This information is necessary for stockholders to understand potential conflicts of interest of management

and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

40.     The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Aegion's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.   Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Aegion will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

42.     Plaintiff repeats all previous allegations as if set forth in full.

43.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.   The Proxy was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about Aegion's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview, and

Centerview's and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of Aegion within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aegion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Aegion's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Aegion, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Aegion stockholders;

13

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  April 26, 2021

                                  **LONG LAW, LLC**

                                  By:    */s/ Brian D. Long*
                                         Brian D. Long (#4347)
                                         3828 Kennett Pike, Suite 208
                                         Wilmington, DE 19807
                                         Telephone: (302) 729-9100
                                         Email: BDLong@longlawde.com

                                         *Attorneys for Plaintiff*